UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| KENT A. VUCUREVICH,<br><br>   Appellant,<br><br>vs.<br><br>U.S. BANK, N.A.,<br><br>   Appellee. | CIV. 14-4115-KES<br><br>MEMORANDUM OPINION AND ORDER AFFIRMING BANKRUPTCY COURT'S DECISION |

Appellant, Kent A. Vucurevich, appeals from the July 9, 2014, decision issued by the United States Bankruptcy Court for the District of South Dakota,[1] granting appellee U.S. Bank, N.A.'s motion for summary judgment in part and denying Vucurevich a general discharge of debts. Bankr. Docket 52.[2] For the following reasons, the court affirms the bankruptcy court's decision.

## BACKGROUND

The pertinent, undisputed facts of this appeal are as follows:

Vucurevich was placed into bankruptcy on June 27, 2011, following an involuntary petition filed by several creditors. *See* 4:11-bk-40501. On August 1, 2011, the bankruptcy court granted the petition and entered an order for relief under Chapter 7 of U.S.C. title 11. U.S. Bank subsequently filed

---

[1] The Honorable Charles L. Nail, Jr., Chief Judge.

[2] "Bankr. Docket" refers to documents filed in the United States Bankruptcy Court for the District of South Dakota under docket number 4:12-4005.

an adversary complaint against Vucurevich on February 2, 2012, arguing that Vucurevich was not entitled to a discharge of indebtedness. Bankr. Docket 1. The case was held in abeyance pending resolution of other adversary proceedings until the bankruptcy court issued an order on November 7, 2013, which allowed the case to resume. Bankr. Docket 28.

U.S. Bank moved for summary judgment on December 27, 2013, arguing Vucurevich was not entitled to a discharge of debts pursuant to 11 U.S.C. §§ 727(a)(3), (a)(4), and (a)(5). *See* Bankr. Docket 29-4. Accompanying its motion and brief for summary judgment, U.S. Bank submitted a statement of undisputed material facts and a number of evidentiary exhibits. *See* Bankr. Docket 29-1 to -3. Vucurevich timely responded, raised several objections to U.S. Bank's motion, and argued that summary judgment was inappropriate. *See* Bankr. Docket 37.

In its motion for summary judgment, U.S. Bank's statement of undisputed material facts set forth the following:

> 25. Debtor does not have a bank account but runs everything on a cash basis.
> 32. Neither Debtor's original [Statement of Financial Affairs] nor Amendments, disclose transfers within the last 2 years of Debtor's interest in KCC One Real Estate, LLC for $250,000.00 nor transfer as security Debtor's interest in 57th and Louise Partners, LLC.
> 47. Debtor only deals in cash.
> 57. Debtor considers himself a sophisticated business person and has been a banker. [3]

---

[3] The bankruptcy court stated that it was unable to locate an official transcript of the meeting that U.S. Bank cited in support of this statement, but noted that Vucurevich raised no objection. Bankr. Docket 52 at 2 n.2.

64. When asked where all the funds went from all the sales of his business entities, Debtor[']s only response was that a lot went to reinvesting, debt payments and distributions to himself. [4]

Bankr. Docket 29-1 at ¶¶ 25, 32, 47, 57, 64. Vucurevich did not object to these statements. Bankr. Docket 37-1 at ¶¶ 25, 32, 47, 57, 64.

With respect to certain assets or records of assets that U.S. Bank argued Vucurevich had not sufficiently accounted for, U.S. Bank identified as undisputed facts that:

62. Debtor sold a watch for $16,000.00 and furnishings for $25,000.00, within a year before the Petition was filed, and is unable to account for any of the $41,000.00.
63. Debtor's only explanation for the use of the $41,000.00 in sales was he probably paid off creditors.
65. Debtor admits, under oath, that he does not have accurate records to account for his business entity sales.

Bankr. Docket 29-1 at ¶¶ 62-63, 65. These statements were accompanied by a transcript citation from Vucurevich's depositions. *See id.* (citing 29-3 (Exhibits 34a; 34b)). Vucurevich objected to ¶¶ 62-63, contending instead that the money from those sales went to pay for the living expenses of his estranged wife and his children. Bankr. Docket 37-1 at ¶¶ 62-63. Regarding records from the entity sales, Vucurevich "clarifie[d] that accurate records would exist once files were reviewed by an accountant."[5] *Id.* at ¶ 65 (citing 29-3 (Exhibit 34b)).

---

[4] The bankruptcy court explained that while both parties made reference to the exhibit from which this statement was gleamed, the court was unable to find a clear description of what the exhibit was. Bankr. Docket 52 at 3 n.3. The bankruptcy court surmised it was a portion of a transcript taken from a meeting of creditors.

[5] Vucurevich's counsel admitted during oral argument before the district court that an accountant had not reviewed the records.

With respect to other business and financial records which U.S. Bank alleged that Vucurevich had not kept or preserved, U.S. Bank's statements of undisputed material facts stated that:

> 42. Debtor has very limited business records, admitting he threw away records.
> 43. Debtor failed to maintain business records but instead allowed previous employees to take computers, with all business records on them, while Debtor did not retain a copy.
> 44. Debtor uses emails extensively in business transactions.
> 45. Debtor has set up his email system to automatically purge all emails after 2 weeks, starting in the year 2008.
> 46. After lawsuits started against Debtor, and after discovery requests, Debtor made the decision that no records or emails would be saved. Debtor decided everything was to be deleted even from the hard drive.

Bankr. Docket 29-1 at ¶¶ 42-46 (citations omitted). Each of these facts was also accompanied by a citation to portions of Vucurevich's deposition testimony. *See id.* Vucurevich disputed these statements because he "stopped maintaining records for entities that were foreclosed upon and were no longer doing business. At the time this decision was made Debtor had no intention for filing for bankruptcy." Bankr. Docket 37-1 at ¶ 42.

The bankruptcy court issued its decision on July 9, 2014, and ruled in U.S. Bank's favor. Specifically, the court concluded that Vucurevich was not entitled to a general discharge of debts pursuant to 11 U.S.C. §§ 727(a)(3) and (a)(5). *See* Bankr. Docket 52 at 6, 9. The court did not, however, grant summary judgment under 11 U.S.C. § 727(a)(4). *Id.* at 11.

With respect to § 727(a)(5), the bankruptcy court found that Vucurevich's "schedules, as amended, show Debtor has personal property assets valued at $2,061,245.00 and secured and unsecured claims against him of

- 4 -

$45,180,164.21." *Id.* at 10. Based on this finding, the court concluded that U.S. Bank's burden of demonstrating a deficiency of assets had been met, and that the burden shifted to Vucurevich to provide a satisfactory explanation. *Id.* Vucurevich's proffered explanation was that,

> The assets Plaintiff discusses in his brief were used to provide living expenses for the Debtor and his estranged wife and kids. Debtor also used the funds to service debt and reinvest in other projects. Debtor has repeatedly and consistently maintained that this is where these funds went. Debtor['s] explanation creates a disputed question of material fact. Whether Debtor's explanations are adequate is not appropriate for summary judgment.

Bankr. Docket 37-2 at 7. Vucurevich's reference and argument regarding "[t]he assets Plaintiff discusses in his brief" appears to be directed at U.S. Bank's contention that Vucurevich had not properly accounted for the $41,000 from the watch and furnishing sales, or the proceeds from the sales of several of his business entities. *See* Bankr. Docket 29-4 at 15.

The bankruptcy court then considered Vucurevich's deposition testimony where he stated his records from 2009 to the date of filing were poor, if not missing. Bankr. Docket 52 at 10. The court also surveyed statements Vucurevich made in depositions and answers to interrogatories in other adversary disputes wherein Vucurevich admitted that some of his schedules and statements were incomplete or inaccurate. *Id.* The court stated it was "left with only Debtor's sweeping explanation that he used some assets to provide for his estranged wife and children, service debt, and reinvest in other projects." *Id.* The court found this explanation to be "vague, indefinite, and unsatisfactory." *Id.* (citing *In re Carter*, 203 B.R. 697, 707 (Bankr. W.D. Mo.

1996)). Thus, because Vucurevich offered only "his own unsubstantiated, uncorroborated, and undocumented general statements" and a general "prospect of an accountant's aid at some unknown time" regarding the whereabouts of his assets, the bankruptcy court concluded Vucurevich had not met his burden and that there was no remaining triable issue of fact. *Id.* (citing *in re Vilhauer*, 458 B.R. 511, 514 (B.A.P. 8th Cir. 2011)). Consequently, the court summarily denied Vucurevich a discharge pursuant to § 727(a)(5).

Regarding § 727(a)(3), the bankruptcy court found, based on Vucurevich's admissions that he does not have a bank account and operates on a cash-only basis, that he "depriv[ed] the case trustee and his creditors of account records as a critical source of information regarding his transactions." *Id.* at 8. Further, the court took issue with Vucurevich's decision to "systematically have his e-mails deleted after two weeks." *Id.*[6] The bankruptcy court concluded that, based on the circumstances, U.S. Bank had met its initial burden under § 727(a)(3) and therefore the burden shifted to Vucurevich to justify his failure to keep or preserve records. *Id.*

In his brief and supporting documentation filed in opposition to U.S. Bank's motion for summary judgment, Vucurevich did not address whether he "concealed, destroyed, mutilated, falsified, or failed to keep or preserve" any

---

[6] The bankruptcy court found a discrepancy between U.S. Bank's undisputed statement that Vucurevich began purging his emails in 2008 and another passage of a deposition where Vucurevich stated that the practice began in January or February of 2009. Thus, the court found that the practice of deleting Vucurevich's emails after two weeks began "not later than January or February 2009." Bankr. Docket 59 at 8.

records relating to his financial condition or business transactions. Rather,

Vucurevich's position was that any such failure on his part would be ultimately

justified under the circumstances. *See* Bankr. Docket 37-2 at 5. Thus,

Vucurevich explained that,

> The majority of Debtor's assets were real estate investments. When
> the real estate market crashed in 2008, Debtor's investments lost
> their value and creditors foreclosed on the investments. This
> resulted in 39 lawsuits being filed against the Debtor between
> 2009 and 2011. Unable to defend against these lawsuits and
> foreclosures, most of the various entities the Debtor had []
> interests in lost their value. Debtor saw no need to maintain
> records for these now defunct entities that held no assets. Debtor
> was overwhelmed by the sheer volume of lawsuits and foreclosures
> and was unable to maintain clear, up-to-date records of assets,
> liabilities, and judgments.

*Id.* at 6. After explaining that his foray into bankruptcy was not undertaken

voluntarily, Vucurevich went on to state that,

> Debtor was overextended with real estate investments and was hit
> hard when the market crashed. He did not have [the] resources to
> maintain accurate records of the scores [of] lawsuits and
> foreclosures that were brought upon him. Debtor did require
> several amendments to his bankruptcy schedules to provide
> complete and accurate information. Given the complexity of
> Debtor's financial situation and the involuntary nature of the
> proceedings, Debtor's delay in providing complete information is
> justified.

*Id.*

The bankruptcy court disagreed. The court considered that, by

Vucurevich's own admissions, he was a sophisticated businessperson and a

former commercial lender for a bank. Bankr. Docket 52 at 8. Vucurevich had a

number of business ventures of varying size and complexity, a computerized

business office, filing system, and staff until 2009. *Id.* Additionally, the court

noted Vucurevich still employed an outside accountant. *Id.* In light of these

circumstances, the court found that Vucurevich

> would understand "ordinary fair dealing and common caution"
> dictate that his business record-keeping not be abandoned when
> financial troubles arise, and that it was reasonable for his
> creditors, taxing authorities, and regulatory authorities to expect
> he would maintain appropriate records even as numerous
> business entities faltered or failed or when his records changed
> locations.

*Id.* at 8-9 (citing *In re Wolfe*, 232 B.R. 741, 745 (B.A.P. 8th Cir. 1999), *In re*

*Goldstein*, 123 B.R. 514 (Bankr. E.D. Pa. 1991)).

The court found that Vucurevich's statement that "accurate records

would exist once files were reviewed by an accountant" to be "illusory if not

delusory." *Id.* at 9 (citing Bankr. Docket 37-1 at ¶ 65). The court explained that

Vucurevich had failed to provide any admissible evidence related to his

finances with respect to certain assets that he alleged to have used for family

living expenses, debt repayment, and reinvestment projects. *Id.* The

bankruptcy court concluded that Vucurevich could not justify his lack of

records. *Id.* Thus, the court summarily denied Vucurevich a discharge

pursuant to § 727(a)(3). Vucurevich now seeks review of the bankruptcy court's

decision and, pursuant to 28 U.S.C. §§ 158(a), and 158(c)(1), appealed to this

court.

## LEGAL STANDARD

"When a bankruptcy court's judgment is appealed to the district court,

the district court acts as an appellate court and reviews the bankruptcy court's

legal determinations de novo and findings of fact for clear error." *Knudsen v.*

*I.R.S.*, 581 F.3d 696, 704 (8th Cir. 2009) (internal citation omitted), *abrogated on other grounds by Hall v. United States*, 132 S. Ct. 1882 (2012). Consequently, "[t]he bankruptcy court's grant of summary judgment is reviewed de novo." *In re Negus-Sons, Inc.*, 460 B.R. 754, 755 (B.A.P. 8th Cir. 2011); *In re Patch*, 526 F.3d 1176, 1179 (8th Cir. 2008).

Rule 56 of the Federal Rules of Civil Procedure is made applicable in bankruptcy proceedings pursuant to Bankruptcy Rule 7056. *In re Hecker*, 459 B.R. 6, 10-11 n.8 (B.A.P. 8th Cir. 2011) (quoting *In re Juve*, 455 B.R. 890, 893 (B.A.P. 8th Cir. 2011)). "Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." *In re Craig*, 144 F.3d 593, 595 (8th Cir. 1998) (citing Fed. R. Civ. P. 56(c)). The moving party can meet his burden by presenting evidence that there is no dispute of material fact or that the nonmoving party has not presented evidence to support an element of its case on which it bears the ultimate burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Once the moving party has met this burden, "[t]he nonmoving party may not 'rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial.' " *Mosley v. City of Northwoods, Mo.*, 415 F.3d 908, 910 (8th Cir. 2005) (quoting *Krenik v. Cnty. Of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995)). "Further, 'the mere existence of some alleged factual dispute between the parties is not sufficient by itself to deny summary judgment. . . . Instead, the dispute must be outcome determinative under prevailing law.' " *Id.* (quoting

*Get Away Club, Inc. v. Coleman*, 969 F.2d 664, 666 (8th Cir. 1992)). The facts, and inferences drawn from those facts, are "viewed in the light most favorable to the party opposing the motion" for summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)).

## DISCUSSION

"Denial of a discharge is a harsh remedy and, accordingly, the provisions under § 727 of the Bankruptcy Code 'are strictly construed in favor of the debtor.' " *In re Charles*, 474 B.R. 680, 683 (B.A.P. 8th Cir. 2012) (quoting *In re Korte*, 262 B.R. 464, 469 (B.A.P. 8th Cir. 2001)). At the same time, however, " '§ 727 was also included to prevent the debtor's abuse of the Bankruptcy Code.' " *Id.* Thus, the "relief afforded by a discharge of debts enables the honest debtor to make a 'fresh start.' " *In re Hartman*, 181 B.R. 410, 413 (Bankr. W.D. Mo. 1995) (emphasis omitted).

Claims for a denial of discharge are often brought under both §§ 727(a)(3) and (5), because "a failure to account for assets is often an important element in the proof of . . . a failure to keep books." *Collier on Bankruptcy* ¶ 6-727.08 (Alan N. Resnick & Henry J. Sommer eds., 16th ed.). Neither § 727(a)(3) nor § (5) requires an element of intent to be shown. *In re Riley*, 305 B.R. 873, 882-83 (Bankr. W.D. Mo. 2004); *In re Huynh*, 392 B.R. 802, 813 (Bankr. D.N.D. 2008). In order to prevail on either claim, "the objecting party must prove each element under § 727 by a preponderance of the evidence." *In re Freese*, 460 B.R. 733, 738 (B.A.P. 8th Cir. 2011) (citing *Vilhauer*, 458 B.R. at 514; Fed. R.

Bankr. P. 4005). Additionally, however, the grounds stated under § 727(a) are phrased disjunctively, and only one ground needs to be proved in order for a debtor to be denied a discharge. *See, e.g., Farouki v. Emirates Bank. Intern., Ltd.*, 14 F.3d 244, 250 (4th Cir. 1994); *In re Krehl*, 86 F.3d 737, 744 (7th Cir. 1996); *In re Reed*, 700 F.2d 986, 989 (5th Cir. 1983).

## I.    11 U.S.C. § 727(a)(5)

A debtor may be denied a discharge if he or she fails to "explain satisfactorily, before determination of denial of discharge under [§ 727(a)], any loss of assets or deficiency of assets to meet the debtor's liabilities." 11 U.S.C. § 727(a)(5). The purpose of this section "is to require the debtor to cooperate with the trustee and creditors in their efforts to trace the disposition of assets of the estate." *In re Whitehead*, 483 B.R. 902, 909 (Bankr. E.D. Ark. 2012). "The party objecting to a debtor's discharge pursuant to [§] 727(a)(5) has the burden of proving facts establishing that a loss or shrinkage of assets actually occurred." *In re Sendecky*, 283 B.R. 760, 766 (B.A.P. 8th Cir. 2002) (citing *In re Stewart*, 263 B.R. 608, 618 (B.A.P. 10th Cir. 2001)). To meet this burden, the creditor must put forth "evidence that demonstrates that the debtor formerly owned substantial, identifiable assets that are now unavailable to distribute to creditors." *In re Hermanson*, 273 B.R. 538, 546 (Bankr. N.D. Ill. 2002) (citing *In re Bryson*, 187 B.R. 939, 955 (Bankr. N.D. Ill. 1995)). If this burden is met, then the burden shifts to the debtor to provide a "satisfactory" explanation for the loss or shrinkage of assets. *Sendecky*, 283 B.R. at 766.

For the debtor to do so, "the issue is whether the [debtor's] explanation satisfactorily describes what happened to [the] assets; not whether what happened to [the] assets was proper." *In re Perry*, 252 B.R. 541, 550 (Bankr. M.D. Fla. 2000) (citation omitted); *see also Cacioli*, 463 F.3d 229, 238 (2d Cir. 2006) (describing the debtor's obligation to "explain the whereabouts of the assets."); *In re D'Agnese*, 86 F.3d 732, 735 (7th Cir. 1996) (explaining the court is not to address "the wisdom of the debtor's dispositions[.]"). Thus, a debtor may succeed in providing a satisfactory explanation even if that explanation is not meritorious. *In re Riley*, 305 B.R. at 885 (noting that a debtor's explanation that assets were transferred to hinder, delay, or defraud creditors may nonetheless be satisfactory for purposes of this section). Additionally,

> An important component in ascertaining the reasonableness of any explanation is its capacity for verification; that is, is the explanation sufficient to enable either the trustee or a creditor to properly investigate the circumstances surrounding the loss or deficiency. Unsubstantiated, uncorroborated and undocumented testimony from the debtor is not likely sufficient.

*Vilhauer*, 458 B.R. at 514-15. Thus, " '[i]f the [debtor's] explanation is too vague, indefinite, or unsatisfactory then the debtor is not entitled to a discharge.' " *Sendecky*, 283 B.R. at 766 (quoting *In re Carter*, 203 B.R. 697, 707 (Bankr. W.D. Mo. 1996); *In re Hartman*, 181 B.R. 410, 413 (Bankr. W.D. Mo. 1995)). Further, whether the debtor's explanation is satisfactory is a finding to be made by the court. *Id.* (footnote omitted); *see also In re Gray*, 295 B.R. 338, 345 (Bankr. W.D. Mo. 2003) (citations omitted) (explaining that "[w]hat constitutes a 'satisfactory' explanation is left to the discretion of the Court."). " 'A debtor's failure to offer a satisfactory explanation when called on

by the court is a sufficient ground for denial of discharge under [§] 727(a)(5).' "
*In re Retz*, 606 F.3d 1189, 1205 (9th Cir. 2010) (quoting *In re Devers*, 759 F.2d
751, 754 (9th Cir. 1985)).

Here, Vucurevich first argues that the bankruptcy court erred by
determining that U.S. Bank had met its initial burden based upon the
discrepancy between Vucurevich's stated assets and the secured and
unsecured claims against him. Docket 6 at 11. Vucurevich explains that this
discrepancy is due to the fact that numerous creditors had already filed or
obtained claims against his assets in foreclosure and personal guarantee
proceedings. *Id.* Because these figures "only reflect the nature of [his] debts," it
was not enough for purposes of establishing a loss or deficiency of assets as
contemplated by § 727(a)(5). *Id.* Second, Vucurevich argues that the
bankruptcy court misinterpreted his statements regarding his use of certain
assets and their proceeds to provide for the living expenses of his estranged
wife and children, to service debt, and to make reinvestments. *Id.* at 12. Rather
than an explanation for the discrepancy between his assets and the various
claims against him, it was meant to be "an explanation as to how Appellant
used proceeds from the disclosed sales on his schedules and from the time
prior to the crash when he would jump from one investment to another." *Id.*
(citing Bankr. Docket 29-1 at ¶ 62; Bankr. Docket 37-1 at ¶ 62). Because of
this misunderstanding, Vucurevich contends that the bankruptcy court erred.
*Id.*

For its part, U.S. Bank appears to rely on the same arguments it made before the bankruptcy court in support of summary judgment. [7] *Compare* Bankr. Docket 29-4 at 14-15 *with* Docket 7 at 8-9. Aside from its reference to the facts as set out in the bankruptcy court's decision and its ultimate conclusion that "The Bankruptcy Court's denial of discharge under § 727(a)(3) and § 727(a)(5) was proper," no substantive reference is made to the bankruptcy court's decision. *See* Docket 7 at 4, 9. Because there is no refutation of any of Vucurevich's arguments on appeal or support for any of the bankruptcy court's analysis, the court will construe the arguments U.S. Bank made in support of summary judgment as supporting the bankruptcy court's decision where possible.

The bankruptcy court found that because Vucurevich's stated assets totaled $2,061,245 and his secured and unsecured claims totaled $45,180,164.21, this showed a literal "deficiency" in Vucurevich's assets and the burden shifted to Vucurevich to provide an explanation for the loss or shrinkage of assets. The bankruptcy court did not provide any legal authority in support of this conclusion that a comparison between Vucurevich's stated assets and debts on his bankruptcy schedules is sufficient to shift the burden of providing an explanation onto him. Neither party advocated this position

_____

[7] For example, U.S. Bank continues to argue summary judgment is appropriate under 11 U.S.C. § 727(a)(4). *See* Docket 7 at 6-8. The bankruptcy court denied summary judgment on that ground, Bankr. Docket 52 at 11-12, and no appeal of that denial has been taken. Consequently, the issue is not before this court.

before the bankruptcy court, and Vucurevich now argues that this conclusion was error.

A survey of various case law reveals that creditors commonly attempt to meet their burden under § 727(a)(5) by pointing out discrepancies between the value of assets as stated on pre-petition financing statements versus the value of the same assets as claimed on post-petition bankruptcy schedules. *See, e.g.*, *In re Cromer*, 214 B.R. 86, 95 (Bankr. E.D.N.Y. 1997) (noting these facts are "typical of those usually found in a § 727(a)(5) objection to discharge proceeding."); *In re Hawley*, 51 F.3d 246, 249 (11th Cir. 1995) (explaining the creditor met its burden of showing "vast discrepancies" between the financial statements and bankruptcy schedules); *see also In re Beausoleil*, 142 B.R. 31, 37-38 (Bankr. D.R.I. 1992); *In re Schwartzman*, 63 B.R. 348, 360 (Bankr. S.D. Ohio 1986). Another common way for creditors to meet their burden is by showing that the debtor owned substantial, identifiable assets prior to bankruptcy, and that those assets are no longer available to creditors. *See, e.g.*, *Cormer*, 214 B.R. at 95; *In re Jahrling*, 510 B.R. 820, 831 (Bankr. N.D. Ill. 2014); *In re Mart*, 87 B.R. 206, 211 (Bankr. S.D. Fla. 1988). This second scenario appears to be what U.S. Bank argued in support of its motion for summary judgment. *See* Bankr. Docket 29-4 at 15 (arguing Vucurevich could not account for the proceeds from a watch and furnishings that he sold for $41,000 or the proceeds from the sales of several business entities he owned prior to bankruptcy).

There is some, albeit limited, support for the bankruptcy court's conclusion. In *In re Ailetcher*, 49 B.R. 681, 685 (Bankr.  D. Haw. 1985), the debtor sought a discharge of $769,643.29. In the debtor's amended petition, he listed the value of his personal property assets at the time of filing for bankruptcy to be $13,020.00. *Id.* The bankruptcy court ultimately denied the debtor's discharge on a number of grounds, but specifically found that the debtor could not explain satisfactorily the "extreme deficiency of assets[] which he claims exists in his estate to meet his liabilities" pursuant to § 727(a)(5). *Id.* at 686. No appeal was taken from the bankruptcy court's decision. This court is not aware of another decision that has adopted this approach with respect to § 727(a)(5).[8]

In contrast, in *In re McGovern*, 215 B.R. 304, 307 (Bankr. D. Conn. 1997), the creditor attempted to satisfy its burden under § 727(a)(5) by relying on the debtor's bankruptcy schedules, which revealed a deficiency of his assets to meet his liabilities. The court stated that the creditor could not meet its burden "of demonstrating an extraordinary factual scenario sufficient to shift

_____

[8] In *In re Cacioli*, 285 B.R. 778, 784 (Bankr. D. Conn. 2002), *aff'd* 463 F.3d 229 (2d Cir. 2006), the bankruptcy court alluded to the possibility that the creditor could meet its initial burden simply by pointing to the debtor's bankruptcy schedules, "which technically reveal a 'deficiency of assets to meet liabilities[.]' " The court stated, however, that it was questionable whether this was sufficient for purposes of the bankruptcy code, but concluded that answering the question was unnecessary because the debtor "more than satisfactorily explained all relevant aspects of his financial history and condition." *Id.* On appeal, the Second Circuit pointed out the bankruptcy court's observation regarding the technical deficiency but, without adopting it, ultimately agreed that any deficiency of assets was satisfactorily explained by the debtor. 463 F.3d at 239.

the burden to the Defendant to 'explain satisfactorily' such deficiency." *Id.* The court concluded this argument was unavailing, noting that "[a] technical 'deficiency of assets to meet liabilities' is inherent in nearly all bankruptcy cases." *Id.* at n.3.

This court agrees with the pragmatic observation in *McGovern* that a debtor in bankruptcy will usually have insufficient assets to meet his or her liabilities. Although a technical or literal reading of § 727(a)(5) may support the bankruptcy court's conclusion that Vucurevich's assets were deficient in this manner, such an interpretation of the statute is at odds with the maxim that provisions of § 727 are construed strictly in the debtor's favor. While Vucurevich's stated assets are several times less than his total debts, that, without more, is insufficient to shift the burden of providing a satisfactory explanation onto him. Therefore, this court concludes that the bankruptcy court erred by finding that the burden had shifted to Vucurevich to explain a deficiency of his assets under § 727(a)(5) based on a comparison between Vucurevich's stated assets and liabilities on his bankruptcy schedules.

Although this court disagrees with the bankruptcy court's preliminary determination, the court may nonetheless affirm the bankruptcy court's grant of summary judgment "on any grounds supported by the record." *Cottrill v. MFA, Inc.*, 443 F.3d 626, 635 (8th Cir. 2006). Thus, for U.S. Bank to meet its initial burden under § 727(a)(5), it would need to show that Vucurevich had substantial, identifiable assets prior to bankruptcy, and that those assets are no longer available to creditors. *Cormer*, 214 B.R. at 95; *see also Jahrling*, 510

B.R. at 831; *Mart*, 87 B.R. at 211. These lost or missing assets may include sums of money. *See, e.g.*, *In re Seligman*, 478 B.R. 497, 503-04 (Bankr. N.D. Ga. 2012); *In re Asif*, 455 B.R. 768, 796 (Bankr. D. Kan. 2011). Further, the assets may include a debtor's interest in business entities or the assets of the business. *See, e.g.*, *Hermanson*, 273 B.R. at 548; *In re Gonzalez*, 302 B.R. 745, 755 (Bankr. S.D. Fla. 2003). Additionally, these assets may include valuable jewelry or home furnishings. *See, e.g.*, *Hermanson*, 273 B.R. at 547; *Hibernia Nat'l Bank v. Perez*, 124 B.R. 704, 706-07 (E.D. La. 1991).

U.S. Bank sought to meet its burden before the bankruptcy court under § 727(a)(5) by asserting that Vucurevich had sold a watch for $16,000 and furnishings for $25,000 in 2010, and Vucurevich could not account for where the money from those sales went. Bankr. Docket 29-4 at 15. Vucurevich's original Statement of Financial Affairs and schedules appears to provide the year of these sales, as well as the value received for the property and the identity of the purchaser. *See* 4:11-bk-40501, Docket 66 at 29. Additionally, U.S. Bank claimed that Vucurevich had sold a number of business entities, but Vucurevich could not account for the money from those sales either. Bankr. Docket 29-4 at 15. No specific information regarding the value of each of the allegedly sold entities is provided, and Vucurevich acknowledged that his Statement of Financial Affairs and the amendments to it did not disclose his sale of KCC One Real Estate, LLC for $250,000 or the transfer of his interest in 57th and Louise Partners, LLC. *See* Bankr. Docket 29-1 at ¶ 32; Bankr. Docket 37-1 at ¶ 32.

In its statement of material facts, U.S. Bank provided support for each of its assertions by citing statements made by Vucurevich during depositions. *See* Bankr. Docket 29-1 at ¶¶ 62-66. In one deposition, Vucurevich was asked where the money from the sales of his watch and furnishings went. Bankr. Docket 29-3 at 72 (Exhibit 34a). Vucurevich responded that it was "Probably [used] to pay off other creditors." *Id.* When asked if there was a list of creditors that had been paid, Vucurevich stated that he would have it ready in approximately two weeks. *Id.* In what appears to be a different deposition, Vucurevich was asked about his interests in 57th and Louise Partners, LLC, KCC One, and Winsor Heights Apartments. Bankr. Docket 29-3 at 73 (Exhibit 34b). The unidentified speaker asks, "And on all these sales, where did all the funds go?" *Id.* Vucurevich replied that "a lot of it went to either reinvesting in other projects, debt payments or distributions." *Id.* Vucurevich was then asked if he had "records of all this," to which Vucurevich replied, "Not accurate ones, I don't think. I've got to get the accountant to go through everything." *Id.* When asked if he believed that "records [would be] available if somebody spent enough time with your accountant," Vucurevich replied, "I believe so." *Id.*

Based on the deposition testimony, U.S. Bank showed that Vucurevich previously owned and sold substantial, identifiable assets in the form of certain personal property worth approximately $41,000 and interests in several business entities worth unknown values. Although U.S. Bank has not established the precise valuation of Vucurevich's business entities or his interest in the entities, the lack of those details is not significant. *Hermanson*,

- 19 -

273 B.R. at 548 (explaining that while the creditor "has not offered past values for most of [the debtor's] shares in the fifteen entities, that lack is not significant."). Additionally, because the assets themselves have been sold and because the proceeds from those sales have, according to Vucurevich, been spent in various ways, U.S. Bank has also shown that substantial, identifiable assets are not available to creditors of the bankruptcy estate. Therefore, U.S. Bank met its initial burden of demonstrating a loss or deficiency of assets under § 727(a)(5). *See, e.g.*, *Cormer*, 214 B.R. at 95; *Jahrling*, 510 B.R. at 831; *Mart*, 87 B.R. at 211.

Because U.S. Bank met its burden, the burden shifted to Vucurevich to provide a satisfactory explanation. Vucurevich's explanation before the bankruptcy court was that the proceeds from those assets went to paying living expenses for his estranged wife and children, to servicing debt, and to reinvesting in other projects. *See, e.g.*, Bankr. Docket 37-2 at 7. Vucurevich has reiterated the same position before this court. Docket 6 at 12. Vucurevich has not, however, provided any documentary or otherwise corroborating evidence that would enable verification of his explanation. The only document that appears in the record and has been cited as support for Vucurevich's statement is a letter submitted by his attorney to the bankruptcy trustee on November 23, 2011. Bankr. Docket 29-3 at 74-75 (Exhibit 34c). In that letter, his attorney wrote that "The monies received from Mr. Dykehouse and Tom Vucurevich was used for living and support of his estranged wife and kids." *Id.*

at 75.[9] This letter, however, is inadmissible hearsay if offered to prove the truth of the matter it asserts, namely, that Vucurevich in fact used those proceeds to provide living expenses for his estranged wife and children. *See* Fed. R. Evid. 801, 802; *see also Novotny v. Tripp Cnty.*, 664 F.3d 1173, 1178 (8th Cir. 2011). Only admissible evidence may be considered for purposes of summary judgment. *Murphy v. Mo. Dep't of Corrections*, 372 F.3d 979, 982 (8th Cir. 2004). Thus, the court is left with the bare statements Vucurevich gave during his depositions.

Even if the court considered the assertion contained within the letter, however, it would not change the fact that Vucurevich has not produced any receipts, specific amounts, documents, dates, corroborating testimony or affidavits from recipients of the funds, or other evidence which would allow the court to verify that the assets were utilized in the manner Vucurevich claims. As courts frequently observe, a debtor's uncorroborated account of what happened to his or her assets need not be accepted. *See, e.g., D'Agnese*, 86 F.3d at 735 (noting the debtor did not offer any documentary evidence or testimony from a party who allegedly received assets); *In re Chalik*, 748 F.2d 616, 620 (11th Cir. 1984) (agreeing with the lower court that the debtor offered no corroborating explanation for the disposition of money); *In re Sword*, 93 B.R. 757, 760 (Bankr. M.D. Fla. 1988) (finding the debtor's explanation that assets

---

[9] In Vucurevich's original Statement of Financial Affairs, Mr. Dykehouse is listed as the purchaser of Vucurevich's watch for $16,000, and Tom Vucurevich is listed as the purchase of the furnishings for $25,000. *See* 4:11-bk-40501, Docket 66 at 29.

were spent on living expenses was not supported by any documentation and concluding it was unsatisfactory); *In re Gordon*, 83 B.R. 78, 80 (Bankr. S.D. Fla. 1988) (finding unsatisfactory that the debtor did not offer any receipts or evidence for jewelry sold or documentation to support claims for the use of the proceeds). This is not to say that Vucurevich's purported uses of the proceeds were categorically impermissible or that the court is concerned with the wisdom of his dispositions. *See, e.g., Riley*, 305 B.R. at 885 (noting the explanation need not be meritorious); *In re Dolin*, 799 F.2d 251, 253 (6th Cir. 1986) (finding the debtor was not relieved from providing corroborating support of his assertion that he spent money on cocaine and gambling). Nor is this to say that there is any single method of proof which would make a debtor's explanation satisfactory. *See Hermanson*, 273 B.R. at 550 (cautioning that, in complex cases, simply "producing for creditors a ream of potentially relevant documents . . . will not by itself create a satisfactory explanation for the disappearance of assets" unless the debtor "does whatever [] is necessary to make the explanation intelligible."). Rather, because "[a]n important component in ascertaining the reasonableness of any explanation is its capacity for verification," a debtor's "[u]nsubstantiated, uncorroborated and undocumented testimony" is insufficient. *Vilhauer*, 458 B.R. at 514-15 (footnotes omitted). Thus, for an explanation to be satisfactory, it must consist of more than vague, indefinite, and uncorroborated assertions by the debtor. *See, e.g.*, *id.* at 514; *Huynh*, 392 B.R. at 813; *D'Agnese*, 86 F.3d at 734; *Hawley*, 51 F.3d at 249. In

the present case, however, that is all Vucurevich has provided to the bankruptcy court as well as to this court.

Thus, while the bankruptcy court may have erred initially in its analysis, the court concludes that the record ultimately supports a finding that U.S. Bank met its initial burden of proof. Consequently, as the bankruptcy court ultimately found, the burden shifted to Vucurevich to provide a satisfactory explanation for his lost or missing assets. As the bankruptcy court noted, "we are left with only [Vucurevich's] sweeping explanation that he used some assets to provide for his estranged wife and children, service debt, and reinvest in other projects." Bankr. Docket 52 at 10. Here, as Vucurevich stated on appeal, those reasons were, in fact, "intended as an explanation" for how he used the proceeds from the sales of those assets. Docket 6 at 12. Vucurevich did not, however, provide anything more than his own free standing deposition testimony that the funds were used in such a fashion. "Where the record as a whole could not lead a rational trier of fact to find for the non-moving party, there is no ' genuine issue for trial.' " *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986), quoting *First National Bank of Ariz v. Cities Servs. Co.*, 391 U.S. 253, 289 (1968). The court finds that the bankruptcy court did not err by rejecting those bare assertions as vague, indefinite, and unsatisfactory, or by concluding that those statements were not enough to avoid summary judgment. *See* Bankr. Docket 52 at 10-11. Consequently, the court agrees with the bankruptcy court that Vucurevich be denied a discharge pursuant to § 727(a)(5).

## II.    11 U.S.C. § 727(a)(3)

Debtors are required to maintain and disclose their financial and business records that permit other parties, as well as the court, to "trace the debtor's financial history, reconstruct financial transactions, and test the completeness of the disclosure requirements." *In re Fokkena v. Huynh*, 379 B.R. 865, 870 (Bankr. D. Minn. 2008) (citing *In re Pulos*, 168 B.R. 682, 690 (Bankr. D. Minn. 1994)). Thus, a debtor may be denied a discharge if he or she has:

> concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case.

11 U.S.C. § 727(a)(3). "While the debtor may justify his failure to keep records in some cases, a discharge may be granted only if the debtor presents an accurate and complete account of his financial affairs." *Meridian Bank v. Alten*, 958 F.2d 1226, 1230 (3d Cir. 1992); *see also In re Schifano*, 378 F.3d 60, 68 (2d Cir. 2004).

To meet its burden of proof under this section, a creditor must show that the debtor has "concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information . . . from which the Debtor's financial condition or business transactions might be ascertained." *In re Swanson*, 476 B.R. 236, 240 (B.A.P. 8th Cir. 2012) (quoting 11 U.S.C. § 727(a)(3)); *see also Huynh*, 392 B.R. at 811. If the creditor meets this initial burden, the burden then shifts to the debtor "to offer a justification for his record keeping (or lack

thereof)[.]" *Swanson*, 476 B.R. at 240; *In re Wolfe*, 232 B.R. 741, 745 (B.A.P. 8th Cir. 1999) (citing *In re Wiess*, 132 B.R. 588, 592 (Bankr. E.D. Ark. 1991)). If the debtor cannot justify his failure to keep or maintain these records, then the discharge will be denied. *See, e.g., In re Keller*, 322 B.R. 127, 133 (Bankr. E.D. Ark. 2005)).

Whether a debtor's failure to maintain financial or business records is justified depends on a consideration of "all of the circumstances of the case." *Wiess*, 132 B.R. at 592 (citing 11 U.S.C. § 727(a)(3)). This determination is an objective one. *Pulos*, 168 B.R. at 692; *see also Sendecky*, 283 B.R. at 764 (explaining that the justification inquiry depends on "what records someone in like circumstances to [the debtor] would keep."). Several factors should be considered such as the "debtor's education, the sophistication of the debtor, debtor's business experience, the size and complexity of debtor's business, debtor's personal financial structure, and any special circumstances that may exist." *In re Beshears*, 196 B.R. 468, 474 (Bankr. E.D. Ark. 1996) (quoting *Weiss*, 132 B.R. at 592); *see also Sendecky*, 283 B.R. at 764 (agreeing with the bankruptcy court's determination that someone with the debtor's "education, business experience, and personal financial structure . . . could not be expected to keep professional business records."). Thus, "[t]he debtor is required 'to take such steps as ordinary fair dealing and common caution dictate to enable the creditors to learn what he did with his estate.' " *Wolfe*, 232 B.R. at 745. (citing cases).

> The type of financial information a debtor is required to keep is a function of its financial circumstances. The more complex one's financial situation, the more numerous and detailed one's records are supposed to be. Conversely, a debtor whose financial affairs are relatively simple[] is not expected to have maintained voluminous detailed records.

*In re Martin*, 124 B.R. 542,543 (Bankr. N.D. Ind. 1991) (internal citations omitted).

Here, Vucurevich first contends that the bankruptcy court erred by concluding U.S. Bank met its initial burden. Docket 6 at 7-8. Vucurevich argues that the court failed to issue findings regarding the specific information that had been denied to his creditors because he did not have a bank account. *Id.* at 8. Additionally, Vucurevich asserts that the court failed to specify what information was missing by virtue of his practice of regularly deleting emails. *Id.* Second, Vucurevich argues that the bankruptcy court erred by failing to consider his proffered justification for any missing or otherwise inadequate record keeping. *Id.* at 9. Vucurevich cites a district court decision from Texas for the proposition that "Other bankruptcy courts have found that a debtor's failure to provide records of a failed business is not grounds for denial of discharge under § 727(a)(3)." *Id.* (citing *In re Morgan*, 360 B.R. 507 (Bankr. D.N.D. Tex. 2007)). Given the various foreclosure proceedings that rendered many of his assets defunct and without assets, Vucurevich maintains that his decision to destroy the records of those businesses was justified under the circumstances. *Id.* at 10. Vucurevich concludes that the question of reasonableness attendant to his justification should have precluded the bankruptcy court from entering summary judgment in favor of U.S. Bank. *Id.*

As with the § 727(a)(5) issue, U.S. Bank appears to rely on the same arguments that it used in support of summary judgment before the bankruptcy court, and it does not refute any of the arguments Vucurevich has raised on appeal or any substantive argument made in support of the bankruptcy court's decision. *Compare* Bankr. Docket 29-4 at 10-12 *with* Docket 7 at 4-6. Thus, this court will again construe U.S. Bank's arguments in favor of summary judgment as supporting the bankruptcy court's decision where possible.

### A.   Did Vucurevich Fail to Keep or Preserve Financial Records?

First, Vucurevich provides no legal authority for his argument that the bankruptcy court was under any obligation to issue findings about the specific information creditors had been deprived of by virtue of Vucurevich's deleted emails or his lack of bank account records. It is not the duty of the court or creditors to "speculate as to the financial history or condition of the debtor, nor should they be compelled to reconstruct the debtor's affairs." *In re Juzwiak*, 89 F.3d 424, 428 (7th Cir. 1996). For the bankruptcy court to speculate on the specific information lacking from the very records that the court does not–and perhaps cannot–inspect is at odds with "the practical reality that [the] debtor is the gatekeeper of his or her own documents and information." *In re Devaul*, 318 B.R. 824, 834 (Bankr. N.D. Ohio 2004). That is why "a discharge may be granted only if the debtor presents an accurate and complete account of his financial affairs." *Merdian Bank*, 958 F.2d at 1230.

Vucurevich's related argument asserts that the bankruptcy court and his creditors were nonetheless required to sift through the documentation that had

been turned over and attempt to piece together his financial history. Docket 6 at 8 (arguing the bankruptcy court did not issue findings regarding "what aspect of Appellant's financial condition could not be determined" and that "boxes of records" had been provided to the trustee and creditors). This argument, however, transposes the debtor's obligation to completely and accurately disclose his financial condition before being entitled to a discharge with the creditor's burden under § 727(a)(3) of showing the debtor had failed to keep or preserve records relevant to that purpose. *Cf. Pulos*, 168 B.R. at 692 ("Contrary to Debtors' beliefs, *the debtor has the obligation* to compile the financial information, and must provide more than just a vague 'hodge podge' of financial transactions.") (quoting *In re Harper*, 117 B.R. 306, 310 (Bankr. N.D. Ohio 1990) (emphasis in original)). As courts frequently observe, the debtor has an affirmative duty to create and maintain financial and business records. *See, e.g.*, *Juzwiak*, 89 F.3d at 429 ("The debtor has the duty to maintain and retain comprehensible records" and "[c]reditors are not required to sift through documents and attempt to reconstruct the flow of the debtor's assets" (quotation omitted); *In re Caneva*, 550 F.3d 755, 763 (9th Cir. 2008) (noting the statute imposes a duty to "keep and preserve recorded information that will allow his creditors to ascertain his financial condition and business transactions."); *In re French*, 499 F.3d 345, 355 (4th Cir. 2007) (explaining that a debtor is "obliged by the statute to preserve sufficient and adequate financial records"). Therefore, while Vucurevich was not required to keep perfect records, neither his creditors nor the bankruptcy court were required to determine first

if the needle was truly amidst the haystack. *Meridian Bank*, 958 F.2d at 1230-31.

Thus, the proper inquiry, which the bankruptcy court undertook, was whether U.S. Bank met its initial burden of proving Vucurevich "concealed, destroyed, mutilated, falsified, or failed to keep or preserve *any* recorded information . . . from which the Debtor's financial condition or business transactions *might* be ascertained." *See* 11 U.S.C. § 727(a)(3) (emphasis added); *see also Devaul*, 318 B.R. at 833 (noting the statute's breadth by applying to "any recorded information" which "might" bear on the debtor's financial condition or business transactions). This inquiry ensures that " 'creditors and the bankruptcy court [have] complete and accurate information concerning the status of the debtor's affairs and to test the completeness of the disclosure requisite to a discharge." *Cacioli*, 463 F.3d at 234 (quoting *Meridian Bank*, 958 F.2d at 1230). By Vucurevich's own admissions, he no longer keeps a bank account, operates on a cash-only basis, did not disclose the transfers of his interests in KCC One Real Estate, LLC and 57th and Louise Partners, LLC in his Statement of Financial Affairs or its subsequent amendments, admitted to throwing away business records, allowed employees to take possession of and keep as their own computers that housed business records without maintaining a copy of the data, and set up an automated system of purging his emails (including those used in business transactions) every two weeks since at least 2009. Further, as discussed in the § 727(a)(5) context, Vucurevich has also failed to produce any records related to the disposition of proceeds from

certain personal property or business entity sales. Although the bankruptcy court did not recount each of these particulars in its analysis, it took note of them when it discussed the factual background of Vucurevich's case. *See* Bankr. Docket 52 at 2-4. Additionally, it is not Vucurevich's lack of a bank account or even the systematic deletion of his emails that the bankruptcy court viewed in isolation. Rather, it was the amalgamation of what had not been kept or preserved that led the bankruptcy court to conclude that Vucurevich "cannot, by his own admission, meet his obligation of disclosure" and his "concessions are, in light of all the circumstances, sufficient to satisfy [U.S. Bank's] initial burden[.]" *Id.* at 8. For these reasons, the court agrees with the bankruptcy court's determination that U.S. Bank met its initial burden under § 727(a)(3) of demonstrating that Vucurevich had not adequately kept or preserved records from which his financial condition or business transactions might be ascertained. Consequently, the burden shifted to Vucurevich to proffer a justification for his lack of business and financial records.

**B.    Was the Lack of Records Justified?**

First, Vucurevich is incorrect that the bankruptcy court simply did not consider his explanation. *See* Docket 6 at 9 ("The Bankruptcy Court erred in not considering Appellant's explanation for any missing or inadequate records."). The bankruptcy court reproduced Vucurevich's proffered justification in its entirety, Bankr. Docket 52 at 4-5, and then rejected it. *Id. at* 8-9. Thus, the bankruptcy court did not ignore or otherwise fail to consider Vucurevich's justification.

- 30 -

Second, Vucurevich stresses that it was not his intention to file for bankruptcy and that he did not believe records of his defunct businesses would need to be kept. *See, e.g.,* Docket 6 at 10 (arguing "Appellant, who had no plans of filing for bankruptcy, saw no need to maintain records for several defunct entities with no remaining assets."); *see also* Bankr. Docket 37-2 at 6. Vucurevich's subjective beliefs, however, are not proper considerations. Rather, a court's inquiry in this context is an objective one. *See Pulos*, 168 B.R. at 692. As one court has stated, "surely it would be an impractical rule if only those debtors who *planned* to seek bankruptcy protection were required to maintain adequate records." *In re Nemes*, 323 B.R. 316, 329 (Bankr. E.D.N.Y. 2005) (emphasis in original). Likewise, "the debtor's honest belief that he does not need to keep the records in question, or that his records are sufficient, or his statement that it is not his practice to keep additional records, does not constitute justification for failure to keep or preserve records under § 727(a)(3)." *In re Sethi*, 250 B.R. 831, 839 (Bankr. E.D.N.Y. 2000). Thus, the fact that Vucurevich did not plan on seeking bankruptcy or that he honestly believed he no longer needed to maintain records cannot serve as a justification for his failure to maintain those records.

Rather, in order to objectively test Vucurevich's explanation, a court should assess a number of factors related to his education, experience, and sophistication. *See, e.g.*, *Beshears*, 196 B.R. at 474; *Sendecky*, 283 B.R. at 764. Vucurevich does not contest the bankruptcy court's articulation of the undisputed facts regarding his level of business sophistication, the size,

number, and complexity of the entities he was involved with, his prior work history as a banker, or the fact that he continues to employ an accountant. *See* Bankr. Docket 52 at 8. Likewise, Vucurevich does not dispute that the bankruptcy court was then required to consider whether "others in like circumstances [to Vucurevich] would ordinarily keep" the records that he did not. *See, e.g.*, *Pulos*, 168 B.R. at 692 (citations omitted). Instead, Vucurevich's argues that the bankruptcy court's answer to that final question was incorrect, and that a genuine dispute of fact remains over whether his failure to keep or preserve records was justified.

In support of his position, Vucurevich relies upon *Morgan*, 360 B.R. at 536, a case out of the Fifth Circuit where the bankruptcy court ultimately found the debtor's failure to keep or preserve records was justified. Although the *Morgan* debtor also owned a number of business ventures, the case is distinguishable. Moreover, the *Morgan* opinion does not appear to use a factor-based inquiry before determining whether the debtor's actions were objectively reasonable, and it contains a number of references to the debtor's intent. *See, e.g.*, *id.* (explaining the records "were not intentionally lost, destroyed, or mutilated by Debtor with the intent or purpose of concealing his financial condition and business transactions" and that the debtor did not destroy records "in contemplation of bankruptcy to frustrate creditors."). A debtor's intent, however, is not relevant in a § 727(a)(3) inquiry. *See, e.g.*, *Wolfe*, 232 B.R. at 745. Nonetheless, the debtor in *Morgan* lost many of his records because he moved offices several times over a period of years prior to filing for

bankruptcy, discontinued use of a storage facility several years prior to bankruptcy which, caused other documents to be lost, and no longer had access to the computer server that housed other records. *Morgan*, 360 B.R. at 536. Further, the majority of the debtor's businesses ceased operation in 2001 and he stopped maintaining their records in 2002, while eventually filing for bankruptcy in mid-2005. *Id.* Moreover, the *Morgan* court observed that the debtor was "winding down his business life" because he was near the age of retirement. *Id.* The court also noted that the debtor managed to turn over a "quite voluminous" number of records irrespective of those that were missing. *Id.*

By contrast, Vucurevich states that his businesses began to decline in 2008, but that it was between 2009 and 2011–the same year he was placed into bankruptcy–that some 39 lawsuits were filed against him causing his business interests to lose their value. *See* Bankr. Docket 37-2 at 6 (explaining that he "saw no need to maintain records for these now defunct entities that held no assets."). Vucurevich is not being asked to "keep such records indefinitely," nor was he winding down his businesses in contemplation of retirement. *See Morgan*, 360 B.R. at 536. Although a number of other ways in which Vucurevich's records were lost have been identified, the only comparable circumstance overlapping from *Morgan* is that Vucurevich no longer has access to a computer containing some of his business records. *See id.* In Vucurevich's case, however, it is not that he no longer has access to the server that housed the records but rather because he allowed an employee to take the computer

without making a copy of its records beforehand. Bankr. Docket 29-1 at ¶ 43. For these reasons, a comparison to *Morgan* is inapposite.

Notably, Vucurevich argued before the bankruptcy court that, "[g]iven the complexity of Debtor's financial situation . . . Debtor's delay in providing complete information is justified." Bankr. Docket 37-2 at 6. But it is not the sheer complexity of a debtor's financial situation that justifies a lack of records. It is the fact that a debtor's financial situation is complex that the law demands a higher standard of recordkeeping to be followed. *Pulos*, 168 B.R. at 692 ("The more complex the debtor's financial situation, the more numerous and detailed the debtor's financial records are supposed to be.") (citation omitted). As a former banker, a businessman who has held substantial interests in a number of entities, and someone who continues to employ an accountant, Vucurevich is held to a high level of accountability in order to justify the missing records. *See id.*

Vucurevich states that he began dealing only in cash and no longer maintained a bank account because he was "sued by virtually every bank in the community." Docket 6 at 6. Even if that is true, Vucurevich does not explain why someone with his level of knowledge and experience would nonetheless fail to keep a ledger or a journal, or why the accountant he employed did not help him keep a record of his revenue and expenses. As one court observed, while "[the debtor] dealt almost exclusively in cash during all his business transactions, keeping little or no verifiable records . . . his dislike of banks did not absolve him from keeping records." *In re Barman*, 244 B.R.

896, 900 (Bankr. E.D. Mich. 2000). Similarly, Vucurevich does not explain why someone with his background and level of business sophistication would believe that his emails should be routinely purged and that records of business transactions would not need to be kept. *See In re Wazeter*, 209 B.R. 222, 231 (Bankr. W.D. Mich. 1997) ("No reasonably sophisticated business person would consider it appropriate to routinely purge all financial records and fail to keep such important records as real estate closing documents."). Moreover, although a number of Vucurevich's business entities may have been rendered defunct *en masse* around the time of his bankruptcy, Vucurevich does not explain why someone with his expertise and education would conclude that records from those businesses should not be kept. *See Caneva*, 550 F.3d at 763 ("Although it may appear to be unsympathetic to a debtor to expect him or her to explain by books and records that a corporation or other entity conducted no business . . . a conclusory statement . . . that an absence of records is justified is not enough to avoid summary judgment."); *see also Meridian Bank*, 958 F.2d at 1232 (explaining "insolvency cannot be used as an excuse to avoid the obligation to provide records to illuminate that condition."). Given Vucurevich's level of sophistication and the high level of accountability he is held to, the bankruptcy court did not err by concluding that the explanations he offered were not suitable to justify his missing records as a matter of law. *Pulos*, 168 B.R. at 692. Therefore, the court agrees that Vucurevich should be denied a discharge pursuant to § 727(a)(3).

**CONCLUSION**

The court affirms the bankruptcy court's decision granting U.S. Bank summary judgment and denying Vucurevich a discharge of debts pursuant to §§ 727(a)(5) and 727(a)(3). Accordingly, it is

ORDERED that the bankruptcy court's decision denying Vucurevich a discharge of debts is affirmed.

Dated February 13, 2015.

BY THE COURT:

/s/ *Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE